Association of the Fifth Federal Circuit here with us today in conjunction with their Fifth Circuit seminar that they're conducting and to observe arguments, so thank you for that as well as we're also, of course, pleased to have counsel for the various parties here today and members of the public. Case number 2024-11-115, United States of America v. Tony Lee Johnson. We'll hear from Ms. Farrell. Good morning, and may it please the Court. Can you be a little louder? We'll be moving closer to you. Yes, Your Honor. The district court erred in denying Mr. Johnson's motion to suppress. His Fourth Amendment rights were violated by the search of the vehicle. Mr. Johnson had an outstanding warrant for a technical violation of his supervised release term. His vehicle was searched upon Officer Pringle's mistaken belief that Arizona v. Gantt had never been decided. The government now theorizes that the search was based upon a concern for officer safety, but that theory does not fit the known facts, which are insufficient under binding case law. Officers waited outside of Mr. Johnson's home, didn't arrest him when he was walking to the car, waited until he got in his car, backed out of the driveway, and then they moved in. His car was surrounded, he was ordered out of the vehicle, he was handcuffed, and he was being led back to the squad car. He was not going to be returned to the vehicle. Despite this, 24 seconds after handcuffs are placed on Mr. Johnson, the search of his car is underway. And prior to that search, Ms. Simmons, the passenger in the vehicle, was asked to step out of the car, led away from the car, standing on the sidewalk next to a United States marshal. She was never frisked by officers, and by all accounts, she was compliant. There's no indication in the record that she posed a danger. In fact, Officer Pringle testified that nothing about her behavior caused him any concern. At this time, I welcome the court's questions, but if there are none, I'd like to start by addressing Michigan v. Long and the requirements of a protective sweep exception. Well, I mean, my understanding is she's a felon and she's the girlfriend of a guy that clearly was dangerous and a felon and all of that. So this is not a typical la-la-la of just two regular people. The officers did know prior to the encounter that she had told another officer that she was at some point convicted of a felony. She was on probation or parole at some point in the past. That has never been held to be enough to support a search of a vehicle. Maybe not by itself, but all of the ad, ad, ad, and the important ad is that she's the girlfriend of this guy that's got all of these issues. And so, you know, wanting to save him, she might want to shoot the police. And that's why they wanted to be sure that wasn't available to her because she's going to take the car back to the house. Why isn't that something the district court could consider and decide on? And the district court could consider association. But association with an individual has also been held to be insufficient to support a search. So a search must be individualized specific to that certain person. Mr. Johnson at the time, although he may be considered dangerous, he was arrested. He was secured. There were multiple officers on scene. This was during the day. And he was being led back to the squad car at the time of the search. He would not be returned. By all accounts, she was compliant. And so just based on a speculative risk that is not, is in direct contradiction to the facts on the ground, we do not think that that would be enough to support a protective sweep. There's always a possibility of danger. You want to put the police at danger. There's always a possibility of danger in interactions with citizens. Well, it can be very remote, but this one is not remote because of this guy and because of this lady. I think it was very, very remote at the time of the search. He's out of the vehicle. He's being led back to the squad car. She's on the sidewalk next to a United States marshal and has shown no signs of being incompliant. She was going to get back in the car and drive it back, right? So they're right outside of. They're right outside of his home, literally like right outside of his home. And so she may have been returned to the vehicle eventually. But at the time of the search, none of that was contemplated by officers. Well, no, he told her that her boyfriend, who was arrested, told her to take it back. He asked her to move the car back into the yard because it was in the middle of the road. She did not respond to that. She didn't make any movements towards the car, any comment back towards him. She was standing on the sidewalk next to a United States marshal. Well, because they were having her there. But, I mean, she clearly didn't say, nah, I won't do that. She was going to do that. So getting in the car is the problem of what's in the car. I don't think there's nothing in the record to suggest that she would have done that with the officers there. She was completely compliant with them. If they would have allowed her to get back in the vehicle, she may have returned to the vehicle, and she ultimately did. But at the time of the search, that wasn't contemplated. Did the district court make any determinations that she was dangerous? The district court held that she was dangerous because of her association, her felon status. The fact that she actually was dangerous, the fact that she's with someone dangerous, not every couple is Bonnie and Clyde. Sometimes you're not at all dangerous, and you just happen to be dating someone who's dangerous in this world of criminality, apparently. And the case law requires that there be propiquity, that it be related to you and your dangerousness. Yes, Your Honor. And that is one of, I think, the most problematic parts of the holding in the district court, is this idea, this stereotype, that romantic partners are somehow more likely to become engaged or in a Bonnie and Clyde situation where they want to free their lover. This, I think, has far-reaching impacts, far aside from this case. Would that extend to parents? Would that extend to siblings? What is the limiting principle on that? Has the Supreme Court cautioned us in this area? Has the Supreme Court cautioned us to do more particularized analysis in this area? Yes, Your Honor, repeatedly. I would say BARA v. Illinois stands for that principle, that it must be particularized to the individual. And in the context of relationships, we do have the First Amendment right to association. And so without more, and especially when it's directly contradictory to the facts on the ground, that generalized stereotype of romantic partners being more likely to become involved in a situation is insufficient. Have we ever held that romantic partner alone is enough? No, Your Honor. No, Your Honor. Is it true that before the search, the officers knew that Simmons had a criminal record or that she was on parole, or did they learn that after the search? So from the record, the officer testified that he had been told by another officer in his department that she had indicated that at one time she was on probation or parole. After the search, they attempt to look that up in the system, and they're unable to find exactly what her felony was, how long ago it was, what it was for. And I think all of those things are important facts, too. In Madrigal, this court held that not all felonies are indicative of dangerousness. So I think it matters what that felony was for, how long ago it was, if she's been rehabilitated since then. Did they know that before the search? He had been told before the search by a member of the police department that she had told another officer that she was on probation or parole. He knew of her already. In preparing to execute the search warrant, they did that investigation. So yes, he knew that she was in a relationship with Mr. Johnson and that she had been convicted of a felony. What was the significance of the red bandana? So that is—the officer testified that he didn't notice that until he had opened the car door. In that significance, it is speculated that Mr. Johnson was a member of the Bloods gang, so that would tie into that. But again, I think it's important to remember that any gang affiliation that he potentially has is once removed from anyone that would be reentering the vehicle. Because it's about Ms. Simmons, she's the only one that would be returned to the vehicle. There are cases where this court has held sufficient facts for a reasonable belief of danger. I would highlight for the court that all of those cases show some present behavior at the time of the search. So in Silva, for example, we have association with a suspected felon, but that person fled the scene. And so in this case, if Ms. Simmons were to have fled, were to have lunged towards the vehicle, were to have done anything that would have indicated that she was dangerous, then we would have a different case here. The Baker case also, that dealt with a couple in a car. They told the officers conflicting stories, they were nervous, the officers observed bullets in plain view. And the government has cited no case where non-contemporaneous facts have been sufficient for a reasonable belief of danger. Because a reasonable officer would not have possessed a reasonable belief that either Ms. Johnson, or I'm sorry, Ms. Simmons or Mr. Johnson were armed and dangerous, the search of the vehicle is unconstitutional. This case is quite different from Michigan v. Long, where a Terry Frisk was extended to the area, the passenger area of a vehicle. In Michigan v. Long, we had a rural area at night, an erratic driver who was intoxicated and uncooperative. Officers saw a large hunting knife in plain view. And there it was clear that they had to be able to secure the scene for officer safety. Here we have none of that. The subjective intent of the officers is not the standard, but it is highly relevant here when the search is conducted so quickly after Mr. Johnson is arrested. The officer here made a rush to judgment. The search, because he believed that it was a search incident to arrest, there was no need to evaluate the scene. He didn't think Ms. Simmons was presently dangerous. He didn't even frisk her when she was standing on the sidewalk. The government attempts to support this search on the back end with legal theories, but the facts don't fit. There aren't any contemporaneous facts on their side. I would also like to address another point in the brief that I believe was slightly misrepresented. Mr. Johnson's comment to the officers that he does not consent to a search of his car was prompted by the officer opening the door to his car. So it was not entirely spontaneous on his part. It was in reaction to the officer moving towards his vehicle and opening the door while he's being led away to the officer's car. Was Simmons ever arrested? No, Your Honor. Simmons was not arrested. She was released. She actually spoke to officers, allowed them to search her home. She was more than compliant. I think did everything that they asked of her, and she was released. They didn't have, she didn't commit any violations. But their search was very early in the situation, so it wasn't like they got to know her for a long time and then did something nasty. They were dealing with a boom, boom, boom at that moment. The search was very early. The search was almost instant after Mr. Johnson was arrested. And so at the time they arrived, they would have had to have a right to search the vehicle. Nothing that they observed while they were at the scene led them to believe that there was any danger. Do you have anything further? You've saved time for rebuttal. No, Your Honor. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Ms. Murphy. May it please the Court. Lauren Murphy for the United States. Officer Pringle was tasked with executing an arrest warrant on Tony Johnson, a felon with a federal drug trafficking conviction who is a confirmed member of the Bloods gang. And he was a suspect in a recent homicide where the victim died by gunshot wound. When Officer Pringle stopped Johnson's vehicle, Johnson's girlfriend, Beatrice Simmons, who Officer Pringle knew at the time was also a felon, was in the car with Johnson. Johnson immediately exited the vehicle. He closed the driver's side door. And as soon as he was handcuffed, he started making statements to distance himself from the car and the contents of it. So under these circumstances, viewed objectively and in their totality, Officer Pringle's very limited 24-second sweep of that vehicle was justified. And in Michigan v. Long, the Supreme Court sought to strike a balance between the need for officer safety, for officers to be able to protect themselves in these situations against the limited intrusion of individuals' rights, and the scope of the search must be justified by the exigencies that created it. And that's exactly what we have here. But Johnson asked the district court below and asked this court today to disregard all the facts that Officer Pringle knew about Johnson because he was under arrest at the time. Well, the fact that Johnson may have had something that implicated him in the vehicle is certainly not relevant. It is relevant, Your Honor, because the court is to look to the totality of the circumstances, and those circumstances necessarily include what Officer Pringle knew about Johnson because Simmons was in this intimate relationship with him. But no, but it has to be a protective sweep. So it has to be the car is somehow a danger to the officers. So the fact that he might have some other incriminating things or something related to the gang or any of that has anything to do with whether or not you can search the car at that time. It does, Your Honor, because the question for the court is whether a reasonably prudent man under the circumstances would be justified in the belief that his safety or the safety of others was in danger. It has to be about safety related to Mr. Johnson. And Mr. Johnson is already in handcuffs. And so Mr. Johnson is not posing a risk anymore to the officers, if he ever was posing a risk, which we will spot in that. He's no longer posing a risk. So it can't be about Johnson posing a risk. It has to be that Simmons poses a risk. That's right, Your Honor. But based on the circumstances, Officer Pringle testified he believed there was a high likelihood that there was something in that car that Johnson didn't want him to find either. That's not relevant, though. The fact that there's something that he doesn't want him to find is not the question. It could be a ledger about drug interactions or something. It could be money. It could be drugs. None of those things, the fact that he has something in the vehicle that he doesn't want him to find doesn't give the officer a reason to conduct a protective sweep. You can only do a protective sweep from Terry and his progeny because of safety. And that's not testimony that he feared for safety. In part it is, Your Honor, because he did believe, he thought that the two things that Johnson could have in that vehicle were either, number one, a firearm, or number two, drugs. And so he was faced with a dangerous situation, as the district court found. But even just looking at Simmons, we know she's in an intimate relationship with Johnson. As the district court noted below, she was not just any passenger. She knows Johnson is a felon. She's in a car with him with his red blood bandana tied proudly around that steering wheel. The record reflects that homicide detectives investigating the recent murder had spoken with Simmons, and she told them that she was a felon. That's how they know. And so this is a case that says that that is enough to say that Simmons poses a risk and therefore the car can be searched. What case says that? Because this is different than Silva. It is different than Silva, Your Honor. In Silva, the two circumstances there that justify the reasonable suspicion for the stop were that the individual was associated with a felon and that they fled at the time of the detention. No fleeing or there's total cooperation here. There is cooperation from Simmons, but Officer Pringle did not observe her demeanor or her cooperation until after. Right, so he couldn't have used that as a justification to search the car if he didn't look at her or note that until after. No, and he didn't use that as a justification to sweep the car. But this court's case law and Supreme Court precedent say that association with a felon is a factor that can be considered. So while not enough on its own, it is something that this court can and should consider. What else about her besides association do you have? It can't be about him. It has to be about her. That's right, Your Honor. Officers also knew at the time of the sweep that she was a felon and on either probation or parole at the time of the stop. And so that's all the information they had. But that tells officers one of two things. Either it's a recent conviction, and she has a recent history of lawbreaking. That poses a threat. Or it's an old conviction, and logic would tell that if she's still on probation or parole, that's a very serious conviction. And that's what turned out to be the case. But again, at the time of the stop, officers know that she is a felon and she's on either probation or parole. And she was removed from the car. Was she put in handcuffs? She was not, Your Honor. She was standing next to a Deputy United States Marshal next to the vehicle. How far from the car? It's difficult to say from the body camera angle, Your Honor, but a few feet at most. After Officer Pringle finds the firearm in that center console, she is then moved farther away from the vehicle into the driveway and placed in handcuffs but told that she's only being detained. After the search? Yes, Your Honor. And we can contrast the facts of this case, Your Honors, with cases that this court has upheld protective sweeps. Looking at United States v. Rodriguez, where this court upheld a protective sweep of the vehicle, the officers in that case knew far less about those individuals than they knew about Johnson and Simmons in this case. In Rodriguez, individuals were driving at night. They were wearing black hoodies and seen shifting around in their seats. After a traffic stop was initiated, those individuals were slow to pull over and pull into an apartment complex known for gang activity, and one of the individuals exits without his jacket on, even though it's cold outside. Officers detain those individuals in the back of a patrol car, and while one officer runs, the other does a protective sweep of the vehicle where they find a jacket and a revolver in that discarded jacket pocket. Now, the facts in that case, while suspicious and certainly justify the protective sweep, are no more suspicious than the facts we have in this case. And the officers did not know anything about those individuals, like they knew about Johnson, the danger he posed, and at least that Simmons was choosing to be in a relationship with this man. She's living with him. She's riding in a car with him. And she, too, is a felon. And that's really the danger in the argument that Johnson makes, asking the court to divide and conquer, look at each of these individual facts in a vacuum, because each of the facts that support the sweep in this case have been held on their own by this court to be a factor that can be considered. We can consider association. We can consider criminal history. We can consider exiting the vehicle, closing the driver's side door. Officer Pringle testified at the hearing that those actions by Johnson heightened his senses. He believed there was something going on, something in the car Johnson didn't want him to find, and that his safety was in danger. And that testimony is elicited at the suppression hearing, notwithstanding the fact that Officer Pringle initially justified the sweep as a search incident to arrest. We can also look, Your Honors, to Johnson's behavior at the time of the stop. As soon as he has stopped, he exits the car, closes the door. Officer Pringle testified that was suspicious to him. This court has held those are factors that can be considered. In United States v. Wright, the court stated that exiting the car adds a final quantum of suspicion for officers. Then, Johnson makes statements. First, he tells Simmons, pull the car back in the yard. He then tells Officer Pringle, or announces it generally, that he doesn't consent to a search. If Johnson had been by himself, would they have been allowed to search that car? No, Your Honor. Arizona v. Gants certainly would not have allowed that search, but Johnson wasn't by himself. And Michigan v. Long crafted the protective sweep exception for situations exactly like this. Well, they could have sought a warrant at that point, obviously. Certainly, Your Honor. But because she was there and going to take the car back, that was what threw them out for this 24 seconds. Is that your view? Exactly, Your Honor. It's important to note that this is all happening very quickly. From stop until the firearm is found in the center console, it's less than 90 seconds. They could have held the whole situation to allow them to assess it if they were unsure. But Michigan v. Long noted that even where a suspect is detained but a full custodial arrest has not been effected, there is a risk to officers because that person could break away, or they certainly are going to be allowed to get back in the vehicle, as Simmons was. And Officer Pringle said that if there was a firearm in the car, as he believed there to be, something that could harm them, he didn't want her to have access to that. She was a bystander. That's correct, Your Honor. But that's the same fact situation that we had in Silva, where the passenger was not the suspect. Officers were executing an arrest warrant on the driver, but the suspect was associating with the felon, and then we have the fleeing. We don't have fleeing here, but we do have other facts and circumstances. That's supported this week. If we were to reverse, what effect would that have on police? It would extremely limit their ability to protect themselves in these situations. There's no question that automobile encounters and traffic stops are extremely dangerous for police officers. This was not a traffic stop, was it? Officers were executing an arrest warrant, Your Honor, but it was an automobile encounter. But it became an automobile encounter because the officers allowed it to be. That's right, Your Honor. And Officer Pringle testified about that at the suppression hearing, that it is safer for officers to encounter an individual in a vehicle than it is in their home, and that makes sense. In their yard? Yes, Your Honor, but this is happening very quickly, and Officer Pringle testified that tactically they prefer to conduct the stop the way they did until Johnson exited his vehicle, which put them in a poor tactical position because they pinned the vehicle and there was an officer standing behind Johnson. So Officer Pringle testified that this was a tactical nightmare, and that played into some of the decision-making, that Johnson acted in a way that put them in a poor tactical position. Officer Pringle reacted quickly, and he did a limited sweep. The scope of the sweep also supports the reasoning behind it. This was not a rummaging around in a car. This was not an invasive search of the vehicle. This was a very limited sweep in two places, Officer Pringle testified, that were in immediate reach of the driver. He looked under the driver's seat and in the center console. At that point, Johnson got out of the car and shut the door, which made them a little suspicious. Was he immediately handcuffed so he couldn't open the door again? He was, Your Honor. He was immediately handcuffed and taken away from the vehicle. As he is being walked away by another deputy marshal, Officer Pringle opens the door, turns on his flashlight, and then does the very limited sweep of the car. Faced with, Your Honors, a known felon, a gang member, a suspected murderer, an intimate partner who stood to regain access to the vehicle, Officer Pringle's limited sweep was justified. Unless the court has any further questions, we'll ask the court to affirm. Your Honors, I would just like to start by clarifying one of the points that the government made is that Mr. Johnson was a murder suspect at the time. So I think it's important to look in the record and see what exactly was known about this murder. So that he's a murder suspect, he was wanted for questioning regarding a murder due to the fact that his mother had been shot by an individual who was later shot. They did not have an arrest. I'm sorry? How is that helpful to you? It's helpful because they didn't even have a warrant. I mean, he wasn't even charged with this murder. So to use that as a way to support a sweep of his vehicle, we think is insufficient. In Rodriguez, the case that the government mentioned, there you had reasonable suspicion of people out at night committing crimes. We don't have that here. We have the execution of an arrest warrant for a technical violation of supervised release. In Gantt, the Supreme Court did not make a passenger exception. Just because there's another individual in the vehicle doesn't mean that now they can search the car. They have to have a reason to believe that that person is armed and dangerous. Here, the officers acted too quickly. The government is right. This was a fast encounter. But the burden, whenever there is not a search warrant, is on the government or the police to show that a suspect is armed and dangerous prior to the search. The district court created a situation where the passenger exception to Arizona v. Gantt could be based solely upon status concerns, without any consideration for contemporaneous indicia of dangerousness. This encourages law enforcement to rush searching passengers and bypass any meaningful observations. And while we do believe it's definitely important for police officers to be safe, it's also important to balance those concerns with citizens' Fourth Amendment rights, which would be largely infringed upon in this case. So we would ask that this court reverse and remand. The court has no further questions. Thank you. Thank you. This case is submitted, and we appreciate the arguments on both sides.